# 22-1318-cv(L),
## 22-1362-cv(CON), 22-1386-cv(XAP)

In The
### United States Court of Appeals
### for the Second Circuit

———————————

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,

*Plaintiffs-Appellees/Cross-Appellants,*\*

———————————

On Appeal From the United States District Court
for the Eastern District of New York

———————————

**REPLY BRIEF ON CROSS-APPEAL OF
PLAINTIFFS-APPELLEES-CROSS-APPELLANTS
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
AND STATE FARM FIRE AND CASUALTY INSURANCE COMPANY**

———————————

Jonathan L. Marks
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
Tel: 312-902-5200

Christopher T. Cook
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Tel.: 212-940-6488

Robert T. Smith
Mary C. Fleming
Ally Roach Jordan
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW
North Tower – Suite 200
Washington, DC 20007-5118
Tel: 202-625-3500

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

*\* Caption Continues on Inside Cover*

————————————————

– v. –

Tri-Borough NY Medical Practice, P.C., Metro Pain Specialists P.C.,
Leonid Shapiro, M.D., Reuven Alon, aka Rob Alon, Columbus Imaging
Center LLC, Medaid Radiology LLC, Yan Moshe, aka Yan Leviev,
Hackensack Specialty ASC LLC, fka Dynamic Surgery Center LLC,
Integrated Specialty ASC LLC, fka Healthplus Surgery Center LLC,

*Defendants-Appellants/Cross-Appellees,*

Mohamed Sayed Ahmed Hassan, P.T., Nile Rehab Physical Therapy,
P.C., Mohamed Elsayed Khallaf, P.T., Handy Physical Therapy P.C.,
Irina Kataeva, P.T., Cityworks Physical Therapy P.C., Mahmoud Ezz
Eldeen Shalaby, P.T., Physical Therapy of New York P.C., Amro
Mahmoud Barakat, P.T., Barakat PT, P.C., Mohamed Mahmoud
Elmandouh, P.T., Protection Physical Therapy P.C., Raouf Akl, P.T,
Primavera Physical Therapy, P.C., Ahmed Mahmoud Abdelsh
Elmansy, P.T., Sky Limit Physical Therapy, P.C., Geoffrey Allerton
Cushman, P.T., PI Physical Therapy, P.C., Sherwin Catugda Paller,
P.T., Floral Park Physical Therapy, P.C., Alpeshkumar Manughai
Patel, P.T., A. M. Patel Physical Therapy P.C., Leonard Luna, D.C.,
Kings Chiropractic Wellness, P.C., Jongdug Park, D.C., All About
Chiropractic P.C., J Park Chiropractic P.C., Giulio Caruso, D.C.,
Brook Chiropractic of NY P.C., Integrated Chiropractic of NY P.C.,
Peter Albis, D.C., PDA NY Chiropractic P.C., Paul Victor
Scarborough, D.C., A.O.T. Chiropractic P.C., Evolution
Chiropractic P.C., Stacy Juyoung Moon, L.Ac., SJM Acupuncture
P.C., Lyudmila Krupnova, L.Ac., LK Acupuncturist P.C., Hyeongsock
Choi, L.Ac., Choice Acupuncture PLLC, Choi-Go Acupuncture PLLC,
Peter Kopach, L.Ac., First Alternative PLM Acupuncture P.C.,
Edwin Castillo, L.Ac., Edcas Acupuncture P.C., Longyu Ma, L.Ac.,
Hidden Dragon Acupuncture P.C., Xia Guan, L.Ac., Rebound
Acupuncture P.C., Regina Moshe, M.D, Citimedical I, PLLC, Vladimir
Nazarov, Right Aid Medical Supply Corp.

*Defendants.*

————————————————

# **TABLE OF CONTENTS**

Reply Argument ................................................................1

I. RICO is an Expressly Authorized Exception to the Anti-Injunction Act ........................................................2

    A. RICO—a Clear Federal Right and Remedy—Can be Given its Intended Scope Only by a Stay of State Lawsuits Brought in Violation of RICO ..........................3

    B. There is No Basis to Limit the "Expressly Authorized" Exception to Statutes over which Federal Courts Have Exclusive Jurisdiction ........................................12

        1. A Requirement of Exclusive Federal Jurisdiction Is Inconsistent with the History of the Anti-Injunction Act and Supreme Court Precedent............................................................13

        2. Defendants Misinterpret *Vendo* to Support Their Argument that Exclusive Federal Jurisdiction Is Required ......................................20

II. The District Court also was Permitted to Enjoin the Pending State-Court Actions in Aid of Its Jurisdiction ..........25

Conclusion ..................................................................36

Certificate of Compliance ............................................37

Certificate of Service ..................................................38

# TABLE OF AUTHORITIES

Cases:

*Allstate Ins. Co. v. Mun*,
  751 F.3d 94 (2d Cir. 2014) ....................................................34

*Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*,
  348 U.S. 511 (1955) ...............................................................5

*Atl. Coast Line RR. v. Brotherhood of Locomotive Eng's*,
  398 U.S. 281 (1970) ..........................................................25-30

*Bowles v. Willingham*,
  321 U.S. 503 (1944) ..............................................................14

*Capital Serv. v. N.L.R.B.*,
  347 U.S. 501 (1954) ..........................................................29-30

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) ....................................................12

*Claflin v. Houseman*,
  93 U.S. 130 (1876)................................................................16

*Houston v. Moore*,
  18 U.S. 1 (1820)....................................................................16

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) ............................................29, 31

*In re BankAmerica Corp. Sec. Litig.*,
  263 F.3d 795 (8th Cir. 2001)................................................11

*Marks v. United States*,
  430 U.S. 188 (1977) ..............................................................23

*Martinez v. California*,
  444 U.S. 277 (1980) ..............................................................17

*Mitchum v. Foster*,
  407 U.S. 225 (1972) ............................. 3-7, 9-11, 13-22, 24-25

ii

*Porter v. Dicken*,
328 U.S. 252 (1946) ..............................................14-16, 21-22

*Rotella v. Wood*,
528 U.S. 549 (2000) ...............................................................9

*St. Paul Fire & Marine Ins. Co. v. Lack*,
443 F.2d 404 (4th Cir. 1971) ..................................................31

*Tafflin v. Levitt*,
493 U.S. 455 (1990) ..................................................16-17, 20

*Tex. Employers' Ins. Ass'n v. Jackson*,
862 F.2d 491 (5th Cir. 1988) (en banc) .................................19

*Total Plan Serv., Inc. v. Tex. Retailers Ass'n Inc.*,
925 F.2d 142 (5th Cir. 1991) ..................................................19

*Trustees of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803 (7th Cir. 2012)..........................23

*United States v. Turkette*,
452 U.S. 576 (1981) ..........................................................6, 8

*Vendo Co. v. Lektro-Vend Corp.*,
433 U.S. 623 (1977) ...................................3, 10-13, 20-24, 28

*Zwickler v. Koota*,
389 U.S. 241 (1967) ............................................................18

STATUTES:

18 U.S.C. § 1961(1) ...................................................6, 12

18 U.S.C. § 1961(1)(A) ....................................................20

18 U.S.C. § 1962(c) .........................................................4

18 U.S.C. § 1962(d) .........................................................4

18 U.S.C. § 1964(a) .............................................4, 10, 19, 32

iii

28 U.S.C. § 2283 ............................................................................ 25

42 U.S.C. § 1983 .................................................. 7, 9-10, 15-18


OTHER AUTHORITIES:

17A Charles Alan Wright, et al., Federal Practice & Procedure
    (3d ed. 2007) ...................................................................... 23

116 Cong. Rec. (daily ed. Jan. 21, 1970) .................................... 7-8

*The Challenge of Crime in a Free Society: A Report by the*
    *President's Commission on Law Enforcement and*
    *Administration of Justice* (1967) .............................................. 8

Merriam-Webster Dictionary ...................................................... 21

iv

## <u>REPLY ARGUMENT</u>

In these consolidated cross-appeals, Defendants have undertaken the heavy burden of showing that the District Court abused its discretion in issuing a preliminary injunction. As the State Farm Companies explained in their response brief, the District Court properly enjoined Defendants from filing new lawsuits, and from pursuing new and existing arbitrations, which they use to perpetuate a massive fraud under New York's no-fault insurance system. In issuing that preliminary injunction, the District Court did not abuse its discretion in finding the State Farm Companies raised substantial questions going to the merits, that irreparable harm would result absent an injunction, and that the balance of the equities and public interest decidedly favored enjoining Defendants' fraud and ensuring the State Farm Companies have a forum in which to litigate their claims.

This brief is limited to the State Farm Companies' cross-appeal, which, unlike Defendants' appeal, raises a purely legal issue. That issue is whether the District Court necessarily abused its discretion when it misconstrued two statutory exceptions to the Anti-Injunction Act, and thereby refused to enjoin hundreds of pending no-fault

lawsuits Defendants are pursuing in state court as part of their massive fraud.

As explained below, the State Farm Companies have satisfied the two statutory exceptions relevant here. The injunction they seek is (1) expressly authorized by an act of Congress (namely, RICO), and (2) in aid of the District Court's jurisdiction to ensure there is a forum capable of resolving the State Farm Companies' claims. The State Farm Companies need only satisfy one of these exceptions—though, as explained, they meet both. Accordingly, this Court should reverse the portion of the District Court's order that refused to enjoin Defendants' pending state lawsuits, and it should affirm in all other respects.

## I. RICO IS AN EXPRESSLY AUTHORIZED EXCEPTION TO THE ANTI-INJUNCTION ACT.

Defendants offer various arguments for why the expressly authorized exception is not satisfied—none has merit. Most notably, Defendants outright ignore pervasive evidence that Congress intended to authorize district courts to enjoin violations of RICO, including pending state-court proceedings that are part of an ongoing RICO conspiracy. Along the way, Defendants double down on their

mistaken argument that a federal statute must confer exclusive federal jurisdiction to satisfy the expressly authorized exception. The Supreme Court's decision in *Mitchum v. Foster*, 407 U.S. 225 (1972), dispels that notion—as do the statutory origins of the Anti-Injunction Act. Moreover, Defendants' argument is premised on the fallacy that a plurality opinion in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977), was a holding, and Defendants misconstrue that opinion in any event.

### A. RICO—a Clear Federal Right and Remedy—Can be Given its Intended Scope Only by a Stay of State Lawsuits Brought in Violation of RICO.

*Mitchum* sets forth the test for the expressly authorized exception: "[W]hether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum*, 407 U.S. at 238. Notably, this does "*not*" require that the "Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the [baseline] prohibition of the anti-injunction statute." *Id.* (emphasis added). Rather, the test is satisfied where a federal right or remedy "*could* be frustrated if the federal

3

court were not empowered to enjoin a state court proceeding." *Id.* at 237 (emphasis added).

Defendants do not dispute that RICO is an Act of Congress "enforceable in a federal court of equity" by private parties. Thus, the issue in this case is largely whether RICO "*could* be frustrated if [a] federal court were not empowered to enjoin a state court proceeding" used to further a violation of RICO. *Id.* (emphasis added). The answer is plainly yes.

As explained in the State Farm Companies' principal brief, the Congress that enacted RICO allowed federal courts to enjoin state-court litigation in these circumstances. *See* State Farm Resp. & Principal Br. 63-69. The statutory text, the legislative history, and basic logic dictate this result.

Under RICO, "[t]he district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter . . . ." 18 U.S.C. § 1964(a). Section 1962, in turn, defines the activities RICO prohibits, including a prohibition on conducting the affairs of an enterprise engaged in interstate commerce through "a pattern of racketeering activity" or conspiring to do the same. *Id.* § 1962(c), (d).

Defendants do not dispute that, under *Mitchum*, "a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." 407 U.S. at 237. Nor, for that matter, must a federal law "expressly refer" to the Anti-Injunction Act. *Id.* (quoting *Amalgamated Clothing Workers of Am. v. Richman Bros. Co.*, 348 U.S. 511, 516 (1955)).

Defendants also do not dispute that the plain language of RICO is broad enough to capture the use of state-court litigation as part of a pattern of racketeering activity. Indeed, the facts here are a perfect illustration. Defendants have conspired and used various businesses to engage in a systemic, multi-state insurance fraud. Defendants then collect on this fraud by filing false and fraudulent claims in state court under New York's no-fault system. The use of state-court litigation is thus part of Defendants' pattern of racketeering activity.[1]

---

[1] The Alon Defendants contend the State Farm Companies did not allege "'Defendants are using a pattern of baseless state no-fault proceedings to monetize and perpetuate their violations of RICO.'" Alon Reply & Resp. Br. 9. But the Alon Defendants ignore sworn evidence that "Defendants have filed over 2,450 arbitrations and approximately 480 state court lawsuits against State Farm Mutual and State Farm Fire seeking" to collect on their fraudulent claims. A-255.

Countless other scenarios exist where criminal enterprises might use state-court proceedings in violation of RICO. For example, a criminal enterprise might bribe state judicial officials to help perpetuate a fraud—whether by procuring victories in civil litigation or altering official documents and records—or to grant bail to keep the enterprise's soldiers out of jail. *E.g.*, *United States v. Turkette*, 452 U.S. 576, 579 (1981) (involving a criminal enterprise charged with, among other things, "bribing and attempting to bribe local police officers, and corruptly influencing and attempting to corruptly influence the outcome of state court proceedings"). Consistent with this view, RICO expressly defines a pattern of racketeering activity to include "bribery" and "extortion" of local officials in violation of "State law." 18 U.S.C. § 1961(1).

It is therefore easy to envision scenarios where the purposes of RICO "could be frustrated if [a] federal court were not empowered to enjoin a state court proceeding" used to perpetuate a violation of that statute—and that is all *Mitchum* requires. 407 U.S. at 237. Otherwise, if a RICO action "is not an 'expressly authorized' statutory exception," then the Anti-Injunction Act "absolutely prohibits in such an action all federal equitable intervention in a pending state court proceeding,

whether civil or criminal, and regardless of how extraordinary the particular circumstances may be." *Id.* at 229.

Rather than dispute any of this, Defendants argue that, unlike with 42 U.S.C. § 1983, which was at issue in *Mitchum*, RICO's legislative history does not show a distrust for state courts giving rise to a need to enjoin pending state-court litigation. Metro Pain Reply & Resp. Br. 35-36; Alon Reply & Resp. Br. 8. Indeed, Defendants claim "State Farm is unable to point to anything in the legislative history of RICO which focuses on state judicial proceedings." Metro Pain Reply & Resp. Br. 36; *accord* Alon Reply & Resp. Br. 8 (similar).

Defendants are wrong. The State Farm Companies detailed a congressional concern about the use of state courts to further the aims of corrupt enterprises. *See* State Farm Resp. & Principal Br. 67-68. Among other things, Senator McClellan, one of the chief architects of RICO, noted "the judiciary is not beyond the reach" of racketeering enterprises. 116 Cong. Rec. S596 (daily ed. Jan. 21. 1970), *available at* https://tinyurl.com/496z9fty. And Senator Hruska, the other chief architect, recognized in some circumstances corrupt enterprises "could not continue to operate without corrupt

7

judges and prosecutors, or without the assistance of a handful of bribed police." *Id.* at S601. Defendants fail to address any of this.

Nor, for that matter, do Defendants address the findings of the Katzenbach Commission, which led to RICO's adoption. Among its findings, the Commission expressly noted the corruption of local "judges" whose "legitimate exercise of duties would block organized crime and whose illegal exercise of duties helps it." *The Challenge of Crime in a Free Society: A Report by the President's Commission on Law Enforcement and Administration of Justice* 191 (1967), *available at* https://tinyurl.com/yvkmfz7n.

Thus, RICO's legislative history shows Congress felt some state courts were ill-equipped to combat the scourge of organized crime—either because local law enforcement lacked the tools and resources, or because organized crime had corrupted local judges, prosecutors, and police officers. *See* State Farm Resp. & Principal Br. 60-61; *see also Turkette*, 452 U.S. at 586-87 (explaining that Congress believed "existing law, state and federal, was not adequate to address the problem" of organized crime). For these reasons, Congress crafted a unique federal remedy, *see* State Farm Resp. & Principal Br. 60-61, and enlisted private citizens to help stop racketeering activities, *see*

*Rotella v. Wood*, 528 U.S. 549, 557 (2000) ("The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity.").

The legislative history of § 1983 is similar. As *Mitchum* explains, the proponents of that statute noted some state courts had been "used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights." 407 U.S. at 240.

Notably, the Court in *Mitchum* did not demand a complete distrust by Congress of state courts—and that makes sense. After all, as explained below, Congress did not oust state courts of concurrent jurisdiction to enforce § 1983. Rather, *Mitchum* noted that § 1983 opened the doors of federal courts because, in *some* situations— particularly "for the several states in the South"—state courts had been unable or unwilling to secure federal constitutional rights. *Id.* at 241.

RICO is no different. Congress did not exclude state courts from having concurrent jurisdiction to enforce RICO's terms, even as

9

Congress expressed concern that some states lacked the means or the will to combat organized crime.

Equally noteworthy, *Mitchum* identified nothing in the legislative history of § 1983 that shows a specific need to enjoin state judicial proceedings. Rather, the Supreme Court held § 1983 satisfied the expressly authorized exception of the Anti-Injunction Act because Congress harbored a distrust of *some* state courts, and because Congress "authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Id.* at 242.

Again, RICO is no different. In addition to Congress's concerns about the inability and unwillingness of some states to curb organized crime, it expressly vested the "district courts of the United States" with "jurisdiction to prevent and restrain violations of section 1962." 18 U.S.C. § 1964(a).

Defendants disagree, claiming "the Supreme Court in *Vendo* held" that to qualify under the expressly authorized exception, "'the Act countenancing the federal injunction must necessarily interact with, or focus upon, a state judicial proceeding.'" Metro Pain Reply & Resp. Br. 35 (quoting *Vendo*, 433 U.S. at 640-41 (Rehnquist, J.,

writing for a plurality)); *accord* Alon Reply & Resp. Br. 8. But *Vendo* held no such thing.

Defendants quote without attribution to Justice Rehnquist's non-binding plurality opinion—a practice they engage in throughout their briefing to this Court. Justice Rehnquist's views sit in tension with the Supreme Court's holding in *Mitchum*. There, as noted above, the Supreme Court held "a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify as an exception." 407 U.S. at 237. And for that reason, the Eighth Circuit has recognized Justice Rehnquist's opinion does not accurately recite *Mitchum*'s holding. *See In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 n.3 (8th Cir. 2001) (criticizing Justice Rehnquist's plurality opinion in *Vendo* for "suggest[ing]" *Mitchum* does "not mean what it says"). Moreover, as the Eighth Circuit explained, the concurring and dissenting opinions in *Vendo* "fail[ ] to show" that a majority of the Court shared in Justice Rehnquist's "more restrictive view of the expressly-authorized exception." *Id.* Thus, *Mitchum* remains binding on this Court, and RICO plainly satisfies the test established there.

Finally, Defendants' argument does not survive basic logic. As the State Farm Companies explained, RICO established a powerful

11

new tool, aimed at enterprises engaged in a pattern of "racketeering activity"—a term of art that specifically includes the "bribery" and "extortion" of local officials in violation of "State law." 18 U.S.C. § 1961(1). *See* State Farm Resp. & Principal Br. 60-61. Under Defendants' approach, federal courts could not restrain such organizations when they corrupt or otherwise abuse state-court proceedings—through bribery or, as in this case, fraud—to advance their illicit ends. That cannot be correct. *Cf. Chevron Corp. v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016) (Kearse, J.) (holding that RICO authorizes a private party to enjoin individuals from enforcing a foreign judgment procured through the bribery and extortion of judges in violation of RICO).

**B.    There is No Basis to Limit the "Expressly Authorized" Exception to Statutes over which Federal Courts Have Exclusive Jurisdiction.**

Rather than focus on what *Mitchum* held, Defendants argue a federal statute must vest federal courts with exclusive jurisdiction to satisfy the "expressly authorized" exception. Metro Pain Reply & Resp. Br. 31-32; Alon Reply & Resp. Br. 6; *see also* SPA-31-32. And they ground this argument in language from the plurality opinion in *Vendo* while describing that opinion as the Supreme Court's holding.

Defendants' arguments are meritless. As explained below, the requirement of exclusive jurisdiction, which they attempt to graft onto the test for the expressly authorized exception, is directly contrary to the history of the Anti-Injunction Act and Supreme Court precedent. As for *Vendo*, Defendants not only misunderstand the Court's holding, but also the interplay of the various opinions offered by a fractured court. And, to the extent any lessons can be derived from *Vendo*, they support the State Farm Companies' position. Indeed, the Seventh Circuit and the authors of Federal Practice and Procedure support the State Farm Companies' reading of *Vendo*.

> **1. A Requirement of Exclusive Federal Jurisdiction Is Inconsistent with the History of the Anti-Injunction Act and Supreme Court Precedent.**

The history of the Anti-Injunction Act shows the "expressly authorized" exception was never understood to require exclusive federal jurisdiction. As originally enacted in 1793, the Anti-Injunction Act contained no express exceptions. Over time, the Supreme Court recognized some federal statutes created exceptions to the Act. Then, in 1948, Congress codified these judicially crafted exceptions to the Anti-Injunction Act when it amended the Act to take on its present-day form. *Mitchum*, 407 U.S. at 231-36.

13

For these reasons, the Supreme Court has looked to its decisions before 1948 to determine the criteria for the "expressly authorized" exception. *Id.* at 237-38. Two such decisions are particularly relevant here; both involve the Emergency Price Control Act of 1942.

In *Bowles v. Willingham,* the Supreme Court held the Emergency Price Control Act satisfied the judicially crafted precursor to the expressly authorized exception. 321 U.S. 503, 510 (1944). According to the Court, the Price Control Act "operate[d] as [an] implied legislative amendment[ ]" to the Anti-Injunction Act because it granted "authority to seek injunctive relief in the appropriate court . . . against acts or practices in violation" of the statute. *Id.*

Thereafter, in *Porter v. Dicken*, the Supreme Court expressly rejected an argument that this exception was improper because state courts had "concurrent jurisdiction" to enforce the Emergency Price Control Act. 328 U.S. 252, 254-55 (1946). Indeed, the Court reached this result, even though the Emergency Price Control Act authorized "the Price Administrator to bring injunction proceedings to enforce the Act in either state or federal courts," because the Act's grant of

"authority was broad enough to justify an injunction to restrain state court evictions." *Id.* at 255.

Thus, in light of the Supreme Court's decision in *Porter*, it cannot be true that the expressly authorized exception applies only to statutes over which exclusive federal jurisdiction lies. *Porter* directly contradicts such a notion. And it is therefore little wonder that, when the Supreme Court later decided *Mitchum*, exclusivity did not factor into the Court's analysis.

Defendants' argument also runs headlong into the outcome of *Mitchum*. There, as the State Farm Companies have explained, the Supreme Court held that § 1983—a statute over which federal and state courts have concurrent jurisdiction—satisfies the expressly authorized exception. 407 U.S. at 242.

To salvage their argument, Defendants claim that when the Supreme Court decided *Mitchum*, it viewed § 1983 claims as falling within federal courts' exclusive jurisdiction. Metro Pain Reply & Resp. Br. 33; Alon Reply & Resp. Br. 7. They argue the Supreme Court later experienced a "change in view," such that state and federal courts now have concurrent jurisdiction over § 1983 claims. Metro Pain Reply & Resp. Br. 33. Indeed, the Alon Defendants go so far as to

15

suggest Congress *never* "envision[ed] working with state courts to enforce § 1983." Alon Reply & Resp. Br. 7.

But Defendants' sea-change view of § 1983 does not make legal or logical sense for at least four reasons:

*First*, as noted above, the *Mitchum* Court did not rest its decision on the presence of exclusive federal jurisdiction. To the extent it addressed the issue at all, the Court expressly noted its prior holding in *Porter*. *See Mitchum*, 407 U.S. at 235 n.17. And *Porter* rejected any requirement of exclusive federal jurisdiction to satisfy what would become the expressly authorized exception of the Anti-Injunction Act.

*Second*, there would have been no basis for the *Mitchum* Court to have believed § 1983 gave rise to exclusive federal jurisdiction. That's because neither the text nor the legislative history of § 1983 overcomes the "deeply rooted presumption in favor of concurrent state court jurisdiction," which is rebutted under longstanding precedent only if "Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim." *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990) (citing *Claflin v. Houseman*, 93 U.S. 130, 137 (1876), and *Houston v. Moore*, 18 U.S. 1, 25-26 (1820)). Nothing in the language of § 1983 unmistakably confers exclusive jurisdiction.

Defendants do not argue otherwise. As a result, Defendants' contention—that the *Mitchum* Court could have somehow believed that § 1983 gave rise to exclusive federal jurisdiction—is meritless.

As a fallback, Defendants point to legislative history, suggesting that it overcomes the presumption that Congress did not intend to oust state courts of concurrent jurisdiction to hear § 1983 claims. Metro Pain Reply & Resp. Br. 31. But Defendants do not point to any "evidence that Congress even considered the question of concurrent state court jurisdiction over [§ 1983] claims, much less any suggestion that Congress affirmatively intended to confer exclusive jurisdiction over such claims on the federal courts." *Tafflin*, 493 U.S. at 461. "[T]he fact that Congress did not even *consider* the issue readily disposes of any argument that Congress unmistakably intended to divest state courts of concurrent jurisdiction." *Id.* And for these reasons, the Supreme Court has already spoken on this issue: State courts may exercise concurrent jurisdiction over § 1983 actions. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980).

*Third*, Defendants point to no case law showing that courts *ever* understood § 1983 jurisdiction to be exclusively federal. In contrast, the State Farm Companies cited cases showing that even before

17

*Mitchum*, it was understood state courts have concurrent jurisdiction over § 1983. *See* State Farm Resp. & Principal Br. 74-75 (collecting authorities). For example, even before *Mitchum*, the Supreme Court recognized that § 1983 merely provided a plaintiff a "*choice* of a federal forum." *Zwickler v. Koota*, 389 U.S. 241, 248 (1967) (emphasis added). Defendants are silent on *Zwickler*.

*Fourth*, Defendants identify no court or commentator that has acknowledged that, after *Mitchum* was decided, the Supreme Court suddenly—and without explanation—changed its view on concurrent jurisdiction over § 1983 claims. And if Defendants are correct, then *Mitchum* is no longer good law—because § 1983 would no longer satisfy the test that, Defendants claim, applies to the expressly authorized exception. Yet no one—aside from Defendants and, perhaps, the District Court—has suggested *Mitchum* is not good law.

As a fallback, Defendants argue their insistence on exclusive jurisdiction is necessary because, otherwise, nearly every federal statute would satisfy the expressly authorized exception. Metro Pain Reply & Resp. Br. 35; Alon Reply & Resp. Br. 6. Not so.

The expressly authorized exception is satisfied only where a federal right or remedy "could be given its intended scope only by the

stay of a state court proceeding." *Mitchum*, 407 U.S. at 238. Indeed, it is this portion of the expressly authorized test that does most of the work to ensure the exception does not swallow the Anti-Injunction Act. That is so because not all federal statutes will be frustrated absent an injunction of state-court proceedings.[2]

Once Defendants' incorrect requirement of exclusive federal jurisdiction is put aside, Defendants do not contest that RICO is a "federal right or remedy, enforceable in a federal court of equity." *Id.* at 237. Nor could they. RICO expressly authorizes district courts "to prevent and restrain violations" of that statute. 18 U.S.C. § 1964(a). Moreover, RICO relies on and federalizes state-law predicates, which shows Congress thought state-law remedies were insufficient for repeated racketeering activity and required federal intervention. *See*

---

[2] *See, e.g.*, *Total Plan Serv., Inc. v. Tex. Retailers Ass'n Inc.*, 925 F.2d 142, 145-46 (5th Cir. 1991) (holding that ERISA did not satisfy the "expressly authorized" exception because there was no suggestion that, in any category of cases, the federal rights established by ERISA "will not be adequately protected in the state courts"); *Tex. Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 503-04 (5th Cir. 1988) (en banc) (holding that the Longshore and Harbor Workers' Compensation Act did not satisfy the "expressly authorized" exception because, unlike RICO, there was no legislative history suggesting an injunction against state actions, and no right under the Act would be frustrated absent an exception under the Anti-Injunction Act).

*Tafflin*, 493 U.S. at 465 ("[M]any RICO cases involve asserted violations of state law, such as state fraud claims."); 18 U.S.C. § 1961(1)(A) (listing state-law offenses constituting predicate acts). This is sufficient to satisfy the first part of *Mitchum*'s test.

> **2.    Defendants Misinterpret *Vendo* to Support Their Argument that Exclusive Federal Jurisdiction Is Required.**

Defendants' position—that exclusive jurisdiction is required—fails for the additional reason that it is premised on a single sentence from Justice Rehnquist's plurality opinion in *Vendo*: "The private action for damages conferred by the Clayton Act is a 'uniquely federal right or remedy,' in that actions based upon it may be brought only in the federal courts." *Vendo*, 433 U.S. at 632.

As the State Farm Companies have explained, Justice Rehnquist's sentence does not establish that exclusive federal jurisdiction is *required*, only that it is *sufficient* to show a uniquely federal right or remedy. State Farm Resp. & Principal Br. 71-72. The grammar of the sentence, including the use of the phrase "in that," supports this interpretation, *id.*—a point for which Defendants have no answer. After all, the phrase "in that" simply "'introduce[s] a statement that explains or gives more specific information about

what one has just said'"—for example, "'[t]he book is good in that it's well written, but I didn't actually enjoy reading it.'" *Id.* at 72 (quoting *In That*, Merriam-Webster Dictionary, tinyurl.com/yzj3c7ae). As used in Justice Rehnquist's plurality opinion, the phrase conveys that a federal statute that gives rise to exclusive federal jurisdiction is a "uniquely federal right or remedy"—without defining the outer edges of what is required to satisfy that standard.

Moreover, even if Defendants were correct that a plurality of the *Vendo* Court intended the expressly authorized exception to require exclusive federal jurisdiction, it is still a plurality. It could not overrule *Mitchum* or *Porter*.

Defendants insist that is not so because four dissenting justices stated they were "not now persuaded that the concept of federalism is necessarily inconsistent with the view that the [Anti-Injunction Act] should be considered wholly inapplicable to later enacted federal statutes that are enforceable exclusively in federal litigation." *Id.* at 659 (Stevens, J., with whom Brennan, White, and Marshall, JJ., joined, dissenting). The use of the triple-negative renders this sentence difficult to follow, but properly understood, it does not set forth a requirement of exclusive federal jurisdiction, either.

21

The dissenting justices' only point was that a later-enacted federal statute of exclusive jurisdiction should not be deemed to implicate the Anti-Injunction Act in the first place. In the end, though, the dissenting justices flagged there was "no need to resolve this question." *Id.* That's because, in their view, the Clayton Act satisfied the test laid down in *Mitchum. Id.* at 656.

Thus, the dissenting justices would have held the expressly authorized exception was satisfied because Section 16 of the Clayton Act could "only be given its intended scope if it includes the power to stay state-court proceedings in appropriate cases." *Id.* at 656-57. And they did not impose any separate requirement of exclusive federal jurisdiction. Just the opposite, the dissenting justices recognized that, in *Porter*, the Court held the Emergency Price Control Act satisfied the expressly authorized exception even though it granted jurisdiction to federal courts "concurrently with State and Territorial courts." *Id.* at 655 n.25. Thus, the dissent cannot be fairly read as adopting a requirement of exclusive federal jurisdiction.

In any event, to the extent any opinion of *Vendo* is controlling, it is the concurring opinion of Justice Blackmun and Chief Justice Burger. As the State Farm Companies explained, "the authors of

22

Federal Practice and Procedure have read *Vendo* to establish 'that § 16 [of the Clayton Act] is an express authorization for an injunction against a pattern of baseless, repetitive claims that are being used as an anti-competitive device because the two concurring justices would go that far and the four dissenters would go even farther.'" State Farm Resp. & Principal Br. 66 (quoting 17A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 4224, at 87 (3d ed. 2007)).

Defendants belittle this reading, calling it an "absurdity" to "elevat[e] the opinion by the fewest justices in *Vendo* to that of the 'controlling' opinion." Metro Pain Reply & Resp. Br. 36. But Defendants nowhere acknowledge the view of the authors of Federal Practice and Procedure, which hews to Supreme Court precedent for determining the holding of a fractured Court. *See* State Farm Resp. & Principal Br. 65-66 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). On top of that, the Seventh Circuit has held "[t]he concurrence [in *Vendo*] controls because it took the narrowest ground to decide the case." *Trustees of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 809 (7th Cir. 2012).

Thus, a majority of the Court in *Vendo* reasoned the Clayton Act qualified as an exception to the Anti-Injunction Act where the state-

court proceedings to be enjoined "are themselves part of a 'pattern of baseless, repetitive claims' that are being used as an anti-competitive device." *Vendo*, 433 U.S. at 644 (Blackmun, J., with whom Burger, C.J., joined, concurring); *see also id.* at 647, 656-58 (Stevens, J., with whom Brennan, White, and Marshall, JJ., joined, dissenting) (reasoning the Clayton Act authorizes a federal court to enjoin even a single "state-court litigation which is being prosecuted in direct violation of the Sherman Act").

Here, the State Farm Companies do not need to resort to *Vendo*, because RICO satisfies the standard announced in *Mitchum*. But it is also apparent that the State Farm Companies' request for an injunction would have commanded a majority of the justices in *Vendo*. After all, the District Court found substantial questions going to the merits, which involved detailed allegations—and proof—that Defendants are using a multiplicity of state-court actions to further a massive fraud in violation of RICO. Thus, even apart from *Mitchum*, the State Farm Companies easily satisfy the standard under the controlling opinion in *Vendo*.

\* \* \*

24

The District Court erred in imposing a requirement of exclusive federal jurisdiction, which runs contrary to the history of the Anti-Injunction Act and the holding of *Mitchum*. And this alone provides a basis for this Court to reverse the portion of the District Court's order declining to grant a preliminary injunction against the hundreds of no-fault lawsuits Defendants are actively pursuing in state court.

## II.   THE DISTRICT COURT ALSO WAS PERMITTED TO ENJOIN THE PENDING STATE-COURT ACTIONS IN AID OF ITS JURISDICTION.

An injunction of the pending state-court actions is also "necessary in aid of [the] jurisdiction" of the District Court to fully litigate the complex RICO, fraud, and unjust-enrichment claims before it. 28 U.S.C. § 2283. Absent an injunction, there is a significant risk the resolution of Defendants' pending state-court lawsuits will be deemed preclusive in the federal action. *See, e.g.,* State Farm Resp. & Principal Br. 36, 78-79. That result would undermine the District Court's "flexibility and authority to decide [the] case" before it, which, the Supreme Court explained in *Atlantic Coast Line Railroad v. Brotherhood of Locomotive Engineers*, would satisfy the "in aid of jurisdiction" exception to the Anti-Injunction Act. 398 U.S. 281, 295 (1970).

25

*Atlantic Coast Line* defined the limits of the in-aid-of-jurisdiction exception and situations where it may be properly invoked. In that case, "the state and federal courts" each had jurisdiction to decide the same claims, and thus, "neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id.*

But here, the State Farm Companies have not invoked the exception simply to prevent the state courts from being the first to reach judgment on identical claims. *Cf id.* at 295-96. Rather, the State Farm Companies have sought an injunction to ensure there is at least one forum capable of resolving their unique RICO, fraud, and unjust-enrichment claims—claims that, as a practical matter, cannot be brought in the pending state-court proceedings that the State Farm Companies seek to enjoin.

Absent an injunction, the state courts, by declaring that Defendants' services were medically necessary or otherwise reimbursable, could preclude a complete resolution of the unique claims at issue in this litigation. Thus, unlike in *Atlantic Coast Line*, the State Farm Companies, as a practical matter, cannot "simultaneously pursu[e the same] claims in both [types of] court[ ]." *Id.* at 295. Rather, continued litigation of the state no-fault actions

26

could preclude complete relief on the unique claims the State Farm Companies are attempting to pursue in federal court.

The relief the State Farm Companies request is therefore consistent with *Atlantic Coast Line*'s understanding of the scope of the exception: It is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.*

Nor is this a situation, like in *Atlantic Coast Line*, where a federal court has been asked to sit in *de facto* review of a state court's judgments. *See id.* at 296. Rather, in this case, the State Farm Companies are asking the District Court to adjudicate unique claims that, due to their complexity, cannot be fairly litigated in the streamlined no-fault actions. The District Court is the only court that has the means to fully consider and adjudicate Defendants' widespread fraud scheme. But the no-fault actions threaten to hinder the District Court's ability to do so. Thus, enjoining the no-fault actions to preserve the District Court's jurisdiction is proper under the Anti-Injunction Act.

The Metro Pain Defendants misconstrue this argument.[3] Citing *Atlantic Coast Line* and the plurality opinion in *Vendo*, they argue the mere possibility that a state court will reach judgment first is not enough to justify an exception to the Anti-Injunction Act. Metro Pain Reply & Resp. Br. 38. But in both cases, the justices warned against a stay of state-court proceedings—involving claims *identical* to those in the federal action—because the stay would simply permit the federal court to be the first to adjudicate those same claims. *See Atl. Coast Line*, 398 U.S. at 295-96; *Vendo,* 433 U.S. at 642 (Rehnquist, J., writing for a plurality).

Again, that is not this case. The complex fraud-based claims the State Farm Companies are pursuing in federal court are not identical to the state no-fault actions in which Defendants are seeking reimbursement on a single claim. And it is precisely because the state no-fault actions are procedurally and factually different from the federal action that an injunction is required to preserve the District Court's jurisdiction.

---

[3] The Alon Defendants do not address the in-aid-of-jurisdiction exception in their reply-and-response brief.

The Supreme Court and this Court have recognized repeatedly the in-aid-of-jurisdiction exception is satisfied in these circumstances. As noted above, the Supreme Court explained in *Atlantic Coast Line* that an injunction would be appropriate where it is "necessary to prevent a state court from so interfering with a federal court's consideration and disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." 398 U.S. at 295. The Court reached the same conclusion in *Capital Service v. National Labor Relations Board*, where it affirmed a federal injunction to prevent enforcement of a state-court decree, so the federal court would have "unfettered power" to decide the case "and to write such decree as it deemed necessary in order to effectuate the policies of the [National Labor Relations] Act." 347 U.S. 501, 505-06 (1954). Likewise, in *In re Baldwin-United Corp.*, this Court affirmed an injunction of "multiple and harassing actions" that "threatened to frustrate proceedings in a federal action of substantial scope" and "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims." 770 F.2d 328, 337 (2d Cir. 1985).

The Metro Pain Defendants claim *Capital Service* is distinguishable because in that case, the National Labor Relations Board had exclusive jurisdiction over the case's subject matter. *See* Metro Pain Reply & Resp. Br. 39, 41. But the presence of exclusive jurisdiction cannot explain the decision in *Capital Service*, because "a federal court does not have inherent power to ignore the limitations of [the Anti-Injunction Act] and to enjoin state court proceedings merely because those proceedings . . . invade an area preempted by federal law." *Atl. Coast Line*, 398 U.S. at 294. Rather, the real concern in *Capital Service* was that the state-court proceedings would nullify "the federal right." *Capital Serv.*, 347 U.S. at 504.

The concern about state-court nullification is no less significant in this case. RICO was enacted to create a federal remedy for interstate organized crime Congress believed states were ill-equipped to address. *See* State Farm Resp. & Principal Br. 60-61, 67-69. But the state-court actions risk disrupting the State Farm Companies' federal right and remedy. Thus, just as in *Capital Service*, the state proceedings here may be properly enjoined "to preserve the federal right." *Capital Serv.*, 347 U.S. at 504.

For similar reasons, the Metro Pain Defendants fail in their attempts to distinguish *Baldwin-United*. As in *Baldwin-United*, the District Court is the *only* court "suited to resolv[e] [the] broad claims'" of fraud the State Farm Companies are pursuing, and the continuation of the state-court suits might destroy the District Court's ability to resolve those claims and award the relief requested. 770 F.2d at 337; *see also* State Farm Resp. & Principal Br. 77-83.

Further, Defendants have no answer for the Fourth Circuit's decision in *St. Paul Fire & Marine Ins. Co. v. Lack*, 443 F.2d 404 (4th Cir. 1971). There, the court recognized the "in aid of jurisdiction" exception applies where a federal court is presented with "a multiplicity of state actions in any one of which all of the interested parties could not, perhaps, have been gathered, and which indicated an 'obvious' attempt by plaintiffs, in the state actions sought to be enjoined, to avoid litigation in a federal forum by filing many separate actions for damages, each for a sum slightly less than the then-required federal jurisdictional amount." *St. Paul*, 443 F.2d at 407.

Indeed, for the same reasons the State Farm Companies have demonstrated irreparable harm in the preliminary-injunction analysis, the District Court must be empowered to enjoin the pending

31

state-court proceedings. Otherwise, the District Court will lack the power to vindicate federal rights created specifically to prevent and restrain this kind of fraudulent conduct. *See* 18 U.S.C. § 1964(a) (providing "[t]he district courts of the United States shall have jurisdiction to prevent and restrain violations of" the RICO statute).

Adding to this, Defendants have readily admitted they are dissipating assets and "likely to be judgment proof" at the end of this action. Alon Reply & Resp. Br. 17; *accord* Metro Pain Reply & Resp. Br. 18 (similar). Absent an injunction, the no-fault actions may force the State Farm Companies to pay on fraudulent claims, with no hope of recovering those payments should the State Farm Companies prevail in the federal action. Thus, even if the District Court is able to fully adjudicate the fraud claims notwithstanding adjudication of the pending no-fault actions, there is a significant risk any judgment will be a hollow one. *See* State Farm Resp. & Principal Br. 39-40 (noting that a preliminary injunction is available in this circumstance and collecting authorities).[4]

---

[4] In discussing the preliminary injunction factors, the Alon Defendants argue the risk that they will be judgment proof somehow cuts in their favor. Alon Reply & Resp. Br. 16 n.1. But the State Farm Companies' point is that *even if* they pay Defendants' no-fault claims

Defendants do not address any of these concerns. They have not denied they will assert any state-court findings as a *res judicata* defense in the federal action. They do not argue the State Farm Companies may somehow consolidate the no-fault actions, such that the State Farm Companies could present a theory of systemic and global fraud in individual actions intended to adjudicate a single bill—and courts have repeatedly held otherwise. *See id.* at 31-32 (collecting authorities). Nor do Defendants suggest it is possible to prove a systemic, $15 million fraud in a no-fault proceeding involving a single bill for a few thousand dollars.

Instead, Defendants argue the State Farm Companies cannot invoke the impracticality of proving the systemic fraud in a no-fault proceeding because they have not yet attempted to raise a fraud defense in the state actions. This argument has no merit. The State Farm Companies are not required to raise fraud as a defense in every state-court action before seeking an injunction. This would defeat the very purpose of the injunction, which is to prevent adjudication of no-fault actions in a state forum that is not equipped to decide the

---

while this federal action is pending, there is a reasonable likelihood the State Farm Companies will *never* be able to recover those monies.

claims in this case. In any event, this Court has already held that "[c]omplex RICO and fraud claims," like the State Farm Companies', "cannot be shoehorned into [New York's no-fault] system." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014).

Finally, just like their argument on irreparable harm, the Metro Pain Defendants' argument as to the "in aid of jurisdiction" exception is premised on the assumption their insurance claims are legitimate and non-fraudulent. They argue they are simply asserting their "right" to reimbursement through no-fault claims, and the State Farm Companies are seeking to "do an end-run around that right." Metro Pain Reply & Resp Br. 42; *cf.* Alon Reply & Resp. Br. 15-17.

But the State Farm Companies have brought an extensive complaint detailing the intricacies of Defendants' fraud scheme. A-45-203; SuppA-1-361. In issuing the preliminary injunction as to arbitration proceedings and future state-court litigation, the District Court found serious questions going to the merits. SPA-33-40. And even after the injunction was issued, Defendants continued their fraud through other entities not explicitly enjoined, such that the State Farm Companies had to move to file a second amended complaint and modify the injunction to capture those additional

34

fraud participants. *See* Dist. Ct. Dkt. Nos. 309-15. In doing so, the State Farm Companies included sworn evidence to further bolster the veracity of their claims. *See* Dist. Ct. Dkt. Nos. 311-15.[5]

The State Farm Companies are large insurers experienced in the insurance industry. Their claims are based on Defendants' fraudulent patterns of claims, treatments, financial transactions, and professional relationships—all of which is alleged in the First Amended Complaint and explained in the State Farm Companies' response and principal brief. *See* State Farm Resp. & Principal Br. 15-18, 42-47. The District Court did not abuse its discretion in finding the State Farm Companies' detailed allegations raised serious questions going to the merits. As a result, the state no-fault actions should be enjoined so the District Court may exercise its jurisdiction to make precisely that determination.

---

[5] The District Court granted the State Farm Companies' motion for a temporary restraining order as to the additional fraud participants. Dist. Ct. Dkt. No. 331. The motions to file an amended complaint and modify the preliminary injunction are still pending.

## **CONCLUSION**

The Court should reverse the portion of the District Court's order declining to preliminarily enjoin the pending state-court litigation and affirm the District Court's order in all other respects.

Dated: April 24, 2023

Respectfully submitted,

Jonathan L. Marks
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
Tel: 312-902-5200

Christopher T. Cook
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020-1605
Tel.: 212-940-6488

*/s/ Robert T. Smith*
Robert T. Smith
Mary C. Fleming
Ally Roach Jordan
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW
North Tower – Suite 200
Washington, DC 20007-5118
Tel: 202-625-3500

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this brief is in compliance with the type form and volume requirements. Specifically, this brief is proportionately spaced; uses a Roman-style, serif typeface (Bookman Old Style) of 14-point; and contains 6,998 words, exclusive of the material not counted under Rule 32(f) of the Federal Rules of Appellate Procedure.

*/s/ Robert T. Smith*
Robert T. Smith
*Counsel for Plaintiffs-Appellees/Cross-Appellants*

37

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing brief by tendering it via the CM/ECF system to the Office of the Clerk of the United States Court of Appeals for the Second Circuit on April 24, 2023. I certify that all counsel of record are registered ECF filers and that they will be served by electronic means via the CM/ECF system.

<u>*/s/ Robert T. Smith*</u>
Robert T. Smith
*Counsel for Plaintiffs-*
*Appellees/Cross-Appellants*